134

25 C.C.P.A.(Patents)

**KAUFFMAN v. ETTEN et al.**

**ETTEN v. KAUFFMAN et al.**

**Patent Appeals Nos. 3923, 3924.**

Court of Customs and Patent Appeals.
May 31, 1938.

H. C. Lord, of Erie, Pa. (Chas. E. Riordon, of Washington, D. C., of counsel), for Kauffman, II.

John J. Darby, of Washington, D. C., Lionel V. Tefft, of Chicago, Ill., and Joseph H. Milans, of Washington, D. C., for Etten.

E. Hume Talbert, of Washington, D. C. (Francis G. Boswell, of Washington, D. C., of counsel), for Hoke.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

These are appeals from a decision of the Board of Appeals of the United States Patent Office affirming the decision of the Examiner of Interferences, in a three-party interference proceeding, awarding priority to the senior party Hoke.

The subject matter relates to improvements in clothes wringers. The function of such subject matter is described broadly in the brief on behalf of the party Kauffman, as follows:

"Clothes wringers are now commonly used in connection with power washing machines and the wringers are also power driven. With the introduction of the power wringers the danger from injury to the operator by the indrawing of a hand, hair or clothes of the operator between the rolls became a matter of immediate concern and very many devices have been invented to avoid such injury or to minimize injury by providing safety releases through which the pressure on the rolls may be instantly relieved. The problem involved is not merely one of providing a mechanical device that will accomplish the release of pressure but involves also a means of effecting such release that is practically instantaneous in its action, that is sensitive to the touch of the operator, and one that may be actuated

with certainty by the operator under panic conditions."

Two counts are involved reading, respectively:

"1. In a wringer, the combination of a frame; rolls mounted in the frame; a top bar; pressure means for the rolls exerting pressure from the top bar; and a safety device comprising a trip bar carried by the top bar extending across the front of the wringer, and means actuated by the trip bar releasing the pressure means.

"2. In a wringer, the combination of a frame; rolls mounted in the frame; a top bar; pressure means for the rolls exerting pressure from the top bar; and a safety device comprising trip bars carried by the top bar and extending across the front and rear of the wringer, and means responsive to the action of the trip bars releasing the pressure means."

It is necessary at the outset for us to consider and pass upon a question of law, viz.: Whether, where the Examiner of Interferences and the Board of Appeals have concurred in a narrow interpretation of counts involved in an interference, holding that otherwise they would be non-patentable in view of the prior art (no motion to dissolve involving the question of patentability having been made), such interpretation is binding upon this court in an interference proceeding.

In this case all the findings of fact relating to conception and reduction to practice by the respective parties, made by the tribunals of the Patent Office, as hereinafter stated, were made upon the basis of their interpretation of the expression "a trip bar * * * extending across the front of the wringer," appearing substantially in both the counts.

The examiner's discussion and interpretation of the meaning of this expression is as follows:

"The point to be decided is whether 'across' is used to denote extent or merely direction.

"In view of the use of the word 'extending' it would seem that the intention was to define the length of the bar. Such statements as that a bridge extends across a river or a cable across an ocean clearly denote an extent from one side to the other and it would seem that this would be the normal meaning of the language here in question. While it is true, as stated by Kauffman, that the interfering applications do not show the bar passing from one extreme side of the wringer frame to the other, they do show it passing entirely over the front of the rollers, which form the effective part of the wringer. This extent is not merely arbitrary but serves to protect the entrance to the wringer so that if, for example, a person's hair should be caught, the head would engage the bar and release the upper roller. It is believed, therefore, that the fair and natural meaning of the counts requires that the bar shall extend at least from end to end of the rollers.

"It should be noted that if 'extending across' is construed, as urged by Kauffman, as meaning merely that the bar extends in a crosswise direction, the limitation thus imposed would be purely arbitrary since, if the bar may be only an inch or two long it seems to be a matter of indifference whether it extends vertically or horizontally. Moreover, if the counts are thus construed they are found to be literally readable on the patent to Webster 1,439,655, December 19, 1922, which would constitute a bar to the allowance of the counts to any of the parties. Applying count 1 to this reference, it is found that Webster shows a wringer having a frame (1 to 3), rolls (4 and 9) mounted in the frame, a top bar (15), pressure means (20, 23, 12, 11, 10) for the rolls, exerting pressure from the top bar, and a safety device comprising a trip bar (30) carried by the top bar and means (18) actuated by the trip bar releasing the pressure means. Movement of element 30 operates to trip the toggle and release the latch 18 and hence this element is properly designated a trip bar. Furthermore it will be seen that the member 30 is transverse to the face of the wringer and is of considerable extent (about one half the length of the rolls). Webster shows a similar trip bar (29) on the back of his wringer. It follows that if 'extending across' relates merely to direction the counts are fully anticipated by Webster. This fact affords a further basis for considering the counts to be limited to structures in which the bars pass from one end of the rolls to the other and this construction is accordingly adopted."

In its decision the board said:

"The examiner has held that the term 'across' means 'entirely across' while appellant argues that this term may be regarded as indicating a crosswise direction.

"In discussing this question, it may be well to refer to the party Hoke's reduction

to practice of October, 1931, in which there is no definite proof as to the length of the roll space of the wringer employed and therefore no proof that the trip bar extended entirely across this space.

"It is our opinion that at times the term 'across' is employed in either manner. While we believe that usually it indicates that the thing under discussion extends entirely or at lease substantially across something else. It is, we believe, sometimes used merely to indicate a transverse rather than a longitudinal direction.

"As to whether it necessarily means 'entirely across' when not employed to indicate direction, we might refer to a sign placed upon a highway to stop or warn travelers. If this sign is not long enough to obstruct the roadway, it would hardly be referred to as a sign 'across' the roadway. On the other hand, if it were sufficiently long, so that it would be substantially impossible to pass, it would not be unusual to refer to it as extending 'across' the road, even if it fell several feet short of the actual distance.

"In discussing this question, the examiner has relied heavily upon the prior patent to Webster and we are fully in accord with his views. If 'across' is accepted as merely indicating direction, count 1 clearly reads upon that patent and we believe, therefore, that the structure shown in the Kauffman Exhibit E cannot be relied upon as a reduction to practice of the subject matter of the counts."

The brief on behalf of Kauffman sums up the foregoing interpretation as follows:

"The Examiner and the Board held that this phrase, particularly the words 'extending across' referred to the length of the trip bar on the theory that 'across' meant from end to end of something rather than direction. Notwithstanding this holding they further found that 'across the front of the wringer' did not mean entirely across the wringer but at least across the rolls. Thus they included trip bars shorter than the width of the wringer and excluded trip bars less than the width of the rolls. The Board went a little further than this, suggesting but not deciding, that probably the counts would be satisfied with a trip bar materially shorter than the rolls provided it afforded a substantial obstruction to the entrance of the rolls."

Whatever shade of difference there may be in the decisions of the respective tribunals of the Patent Office, the fact remains that they interpreted the counts in the light of the prior art disclosed in the patent to Webster and that they interpreted them narrowly to avoid that prior art.

The interpretation is challenged by Kauffman who relies for reduction to practice, in the first instance, upon a device introduced in evidence as Kauffman's Exhibit E. This device shows a trip bar approximately two-thirds the length of the rolls. The specific trip bar of the Hoke device upon which the award to Hoke was based by the Examiner of Interferences seems to have been the one introduced as Hoke's Exhibit 7. It was described by the Examiner of Interferences as being of "such size that it would extend from end to end of the rolls of a standard wringer," and that it "thus satisfied the counts." It is stated in the decision of the Examiner of Interferences that the Hoke application drawing "was evidently made from this device" and that this drawing "shows it as having such extent."

The Etten devices will be referred to later.

The contention on behalf of Kauffman seems to be that the Primary Examiner must have considered the prior art before declaring the interference and that it must be inferred that he did not give the claims the narrow interpretation subsequently placed upon them as counts by the Examiner of Interferences and the Board of Appeals. As we understand the argument of Kauffman's counsel it is to the effect that Webster's device consists of a "*target*" or "*spot* operated lever," and that this is something different from a "trip bar." The brief says:

"We cannot assume that the Primary Examiner did not know of the Webster patent. It does not involve '*trip bars*' in the sense that they are used in these counts. Length is injected into these counts not by the word 'across' or 'extending,' but by the term 'trip bars' in themselves. These are accepted in the art as a definitely distinct type of mechanism from a *target* or *spot* actuated release and relate to bars that are extended so as to give in effect a plurality of spots equally responsive when struck in effecting a release. Every release bar structure which is offered by these witnesses as the trip bar release, except some tentative test experimentally leading up to trip bar structures, have this quality."

With respect to this it may be said that we fail to find anything in the record which

shows what interpretation the Primary Examiner placed upon the claims. So far as we know, he interpreted them as did the other tribunals later, but, however this may be, we do have substantially concurring interpretations by those other tribunals—interpretations clearly made to avoid the prior art.

It is our view that the interpretation as stated by the Board of Appeals is binding upon us in this proceeding.

It should be borne in mind that no one of the parties to this case raised the question of the right of any other of the parties to make the claims which constitute the counts. There was no motion to dissolve under any of the rules of the Patent Office. It is not in question that the applications of all the parties support the counts as those counts are interpreted by the tribunals of the Patent Office. Upon the other hand, if the counts are given the construction for which Kauffman contends, they would not be patentable to any one of the parties, according to the holdings of the Examiner of Interferences and the Board of Appeals, because of the prior art. The question before us, therefore, is not one of the right of any of the parties to make the counts, but in the case of both Kauffman and Etten, the question is that of reduction to practice, prior to the filing date of Hoke, or conception and diligence, under the interpretation given.

Repeatedly, it has been judicially determined, in cases where the counts have been given a broad interpretation by the tribunals of the Patent Office and found patentable under such interpretation, that the courts were bound by such interpretation with the result that they have refused to consider contentions that a narrow interpretation must be given in order to render the counts patentable. Slaughter v. Halle, 21 App.D.C. 19; Marshall and Levandosky v. Ledwinka, 67 F.2d 495, 21 C.C.P.A., Patents, 728; Schuster v. Brown, 69 F.2d 373, 21 C.C.P.A., Patents, 932; Angell v. Morin, No. 3276, and Morin v. Angell, No. 3277, 69 F.2d 646, 21 C.C.P.A., Patents, 1018, are illustrative.

In the last case cited, supra, there were cross-appeals. In Suit No. 3276, Angell appealed as to a single count which the tribunals of the Patent Office concurred in holding non-patentable unless given a *narrow* construction. This construction was agreed to by us. Angell there contended that, even under the construction given, the

claim was not patentable. We declined to pass upon that question in that proceeding, saying (page 648):

"This is a question which may not be determined by us in an interference proceeding, and we express no opinion upon that subject [citing cases]."

■ Upon both reason and authority, we hold that where the Board of Appeals of the Patent Office interprets the counts of the interference narrowly, with the declaration that otherwise interpreted they would not be patentable over the prior art, such interpretation must be accepted by us in an interference proceeding such as that at bar.

■ It is obvious that if, in this case, an interpretation broader than that adopted by the Board of Appeals were given the counts, we should be confronted by the holding that, under such broad interpretation, the counts are unpatentable over the prior art, and, presumably, the interference would not have been declared. Patentability is not a matter within our jurisdiction in an interference proceeding. In the case of Robert F. Gowen v. William F. Hendry and Robert W. King, 37 F.2d 426, 428, 17 C.C.P.A., Patents, 789, 793, we said:

"The question of the right of a party to secure a patent cannot be raised in this court on appeals in interference proceedings. In such cases the jurisdiction of this court is confined to the question of priority of invention and to such ancillary questions as may be involved therein [citing authorities]. * * * These decisions rest upon the proposition that the question of the patentability of an alleged invention is an issue between the applicant and the Patent Office—the Patent Office representing the public. See 35 U.S.C.A. §§ 36, 59. Whereas, the issue of priority of invention and questions ancillary thereto in interference proceedings are matters inter partes. See 35 U.S.C.A. §§ 52, 59. The Congress has provided for separate appeals to this court in these classes of cases."

The foregoing is the only question of law presented by the reasons of appeal in this case and it is raised only by the party Kauffman. The others are questions of fact relating to conception, reduction to practice, and diligence.

■ The interference was declared between copending applications. Hoke's application was filed March 22, 1932; that of Kauffman, from which the counts were

138

taken, July 11, 1932, and that of Etten, December 22, 1932. The preliminary statements show that Hoke claimed conception, disclosure, and drawings in March 1928 with embodiment and successful test, respectively, October 5, 1931, and October 7, 1931; that Kauffman claimed conception, disclosure, drawings, embodiment, and successful test all in early December 1930, and that Etten claimed conception June 1, 1929, drawings, disclosure, and first embodiment in early January 1931, with successful test January 15, 1931. Etten sought to amend his statement and claim an earlier date for reduction to practice, but his motion so to do was denied by the Examiner of Interferences. No appeal was taken from such denial and he is bound by the dates recited.

The Examiner of Interferences awarded Hoke conception and reduction to practice "as of the first part of October 1931." He awarded Kauffman reduction to practice "in February or March of 1932," declaring that it need not be decided whether he was entitled to an earlier date for conception, because, assuming that he had "established conception prior to that date (October 1931)" he failed to establish diligence over the requisite period. No specific dates were awarded Etten for conception and actual reduction to practice by the Examiner of Interferences, it being said, after a review of the evidence offered on Etten's behalf, that "Etten was subsequent to Hoke in reducing to practice and it is clear that he was lacking in diligence during the fall of 1931 and the following winter. * * * Etten cannot prevail over Hoke regardless of his date of conception and such date, therefore, need not be fixed."

The Board of Appeals seems to have entertained doubt with respect to Hoke's reduction to practice in October 1931, and we have experienced difficulty in construing that part of its decision reading:

"We regard the Hoke alleged reduction to practice of October, 1931, as a more difficult question. While it is true that it is not proved definitely that the trip extended entirely across the front of the wringer, we believe that there is no reasonable doubt but that it extended substantially across, like the sign that would extend substantially across a highway. We are of the opinion that that reduction to practice probably would satisfy the counts. However, in view of the difficulty which we believe exists here, we have carefully considered the party Kauffman's proof as to

reduction to practice of a structure such as represented by his Exhibit Q.

"The party Hoke filed on March 22, 1932, and the Party Kauffman contends that his own corroborating witnesses established the fact that he conceived and reduced to practice the structure of this exhibit prior to that date, or at least that he conceived and was diligent. Also he urges that his Exhibit X proves a reduction by April 25, 1932. We do not consider that there is any reasonable doubt but that the corroborating witnesses can be relied upon as proving that a structure such as shown in this exhibit was conceived and reduced to practice sometime during the earlier part of 1932, but we do not consider that any date has been sufficiently established prior to the filing date of the Hoke application. The Courts have repeatedly held that memory testimony, given several years after the events took place, is most unreliable."

A fair interpretation of the foregoing seems to be that the board did not feel it necessary definitely to rule upon the question of Hoke's reduction to practice in October 1931, because of its finding that Kauffman had failed to show reduction to practice, or, we assume, conception with requisite diligence, prior to Hoke's filing date.

In view of the definite award to Kauffman by the Examiner of Interferences of a date in "February or March of 1932" and by the board in the "earlier part of 1932" both so near the filing date of Hoke, we deem it regrettable that the board did not make a specific finding as to Hoke's October 1931 date and either affirm or reverse the examiner's finding on that point. If Hoke should have to rely upon his filing date, and Kauffman is given a date, even for conception, prior to that filing date of Hoke, the question with respect to Kauffman's diligence might be different from that presented where Hoke is awarded the date of October 1931.

Feeling that the decisions of the Examiner of Interferences and the Board of Appeals are not in full concurrence upon this point, we have deemed it essential carefully to consider the testimony on behalf of Hoke with respect to the October 1931 date definitely awarded him by the former. This we have done in the light of Kauffman's brief wherein much of the testimony is quoted with comment and argument.

In this connection it is noted that the brief on behalf of Hoke states that, "nei-

ther of the parties have heretofore seriously questioned Hoke's proofs of actual reduction to practice as of October 7, 1931," and quotations are made from what are stated to have been the briefs of Kauffman and Etten filed before the board. The briefs and arguments before the board are not a part of the record before us, and there is nothing in the decision of that tribunal indicating that its conclusion was based upon any concession made by counsel. Whatever counsel for Kauffman may have argued before the board or stated in his brief there, his assignments of error in the appeal to that tribunal were sufficient to raise the question of Hoke's actual reduction to practice.

It is our conclusion that the award of the October 1931 date to Hoke, by the Examiner of Interferences, is supported by the record and is not against the weight of the evidence.

■ With respect to Etten the board held substantially as was held by the Examiner of Interferences. So, as to Etten, we have concurring findings and the rule applies that such findings will not be disturbed by us unless manifestly wrong.

The situation under the decision before us is that Hoke, the senior party, is awarded priority over both Kauffman, the intermediate party, and Etten, the junior party, and Kauffman apparently is, in effect, awarded priority as between himself and Etten. It will conduce to clearness for us in the further consideration of the appeals to treat them separately in the order of their number.

### Suit No. 3923.

This involves the appeal of Kauffman.

Since Kauffman's Exhibit E fails to meet the counts under the interpretations given them, it need be no further considered upon the questions of conception and reduction to practice.

The record is replete with testimony as to the activities of Kauffman with respect to various types of wringers and the brief on his behalf reviews this testimony quite completely, seeking to spell out of it conception and reduction to practice, or at least conception with diligence prior to the other parties, his exhibits Q and X being relied upon to this end.

The Examiner of Interferences did not discuss Exhibit X but held that Exhibit Q "which," he said, "appears to have been completed in February or March of 1932,

the exact date being imaterial," constituted reduction to practice, but further held that in view of the date of October 1931 awarded to Hoke for reduction to practice that the date awarded to Kauffman could not be of benefit to him. The Examiner of Interferences indicated doubt as to whether any earlier date than February or March of 1932 could be awarded Kauffman for conception, but held that, even if entitled to an earlier date for that, he failed to show diligence from "October 1931 to the time when his exhibit Q was completed and tested," saying, "Evidence of such diligence, especially in October and early November of 1931, is lacking."

The Board of Appeals did not discuss Kauffman's Exhibit Q, but referring to his Exhibit X held, in effect (the exact text quoted supra), that while he might be awarded a date for conception and reduction to practice sometime during the early part of 1932, no date was sufficiently established prior to the filing date of the Hoke application. The board did not specifically discuss the question of Kauffman's diligence, seemingly contenting itself with the findings of the Examiner of Interferences upon that issue.

We have examined the testimony in the light of the findings of the tribunals of the Patent Office and in the light of Kauffman's quite elaborate discussion in his brief under the head of "Kauffman's Case on Revised Interpretation."

■ The testimony has required meticulous analysis, because of the difficulty in segregating that which is pertinent to exhibits Q and X from that pertinent to work and experiment upon other forms of devices relating to the art, but not responding to the counts. We fail to find in the testimony pertinent to the exhibits which respond to the counts any sufficient showing that would justify a reversal of the findings of the tribunals of the Patent Office. Those findings are negative; that is, they are to the effect that requisite evidence was lacking. This, we think, is true and, since there is no pertinent evidence, there is no need here for a recital of or comment upon that not relevant.

### Suit No. 3924.

This involves Etten's appeal.

■ The brief on Etten's behalf, after stating the construction placed upon the limitation "a trip bar * * * extending across the front of the wringer" by the

Examiner of Interferences and the Board of Appeals says:

"There can be no complaint against the reasoning of either of the lower tribunals. Otherwise, one would be directly attacking the patentability of the claims, and that cannot be done here."

It is argued, however, that "acquiescing in either opinion," the fundamental error of the board "was in not according to Etten a date of invention (a conception and reduction to practice—actual) at a time prior to any available date of his opponents Kauffman and Hoke."

The Examiner of Interferences held that the only wringers produced by Etten responding to the counts are those illustrated by Etten's exhibits 3, 12 and 14, and found that Exhibit 14 was not made until May or June of 1932. He held that not only is there no definite evidence that Exhibit 3 was ever satisfactorily tested but that "it clearly appears that it was not successful" and declared it to represent nothing more than "an abandoned experiment." Exhibit 12 was discussed at length and as to it the holding was that evidence of any such test of it as might effect a reduction to practice is lacking. The Board of Appeals, merely reciting that it had carefully considered the oral and written argument advanced by Etten, stated: " * * * it is our opinion that there is clearly no proof of a satisfactory test and we are convinced that this party cannot prevail."

In the argument before us Etten acquiesces in, or at least does not complain of the finding with respect to his Exhibit 14. Also, the brief concedes that he may not rely upon his Exhibit 3 for actual reduction to practice, but he does rely upon it for conception, and claims that, inasmuch as it was produced in the fall of 1929, he is entitled to be regarded as the first of the parties to conceive. Exhibit 12 he claims as an actual reduction to practice at a time prior to May or June of 1931.

The brief presents much argument based upon the testimony respecting Etten's activities, but it does not satisfactorily answer the conclusion drawn by the Examiner of Interferences from actual testimony recited by him in his discussion from which we quote as follows:

"Etten states (Q. 40) that it overcame all the objections found in exhibits 2 and 3 but he does not describe or fix the date of any tests on which he bases this conclusion. Chamberlain is less enthusiastic as indicated by the following portion of his answer to X Q. 70, 'Both of these wringers (exhibits 2 and 12) were not good operating safety releases. * * * In Exhibit 12 we first found that the top would fly off and then we developed this strap which is hinged in the top and after that development we ran into one of your patents which it would infringe, and so it was discarded. It still had the locking arrangement at the ends which I didn't like.'

"While it seems to be alleged that exhibit 12 was discarded because of the supposed infringement it should be noted that this infringement related to features not involved in the present counts and that no attempt was made to produce a device omitting these features but embodying the invention here in issue. It also clearly appears that exhibit 12, aside from the question of infringement, was not considered a success. The testimony of Chamberlain quoted above is pertinent in this connection as is also the following: Chamberlain (X Q. 72) 'I was reasonably certain that we couldn't make this sort of a device satisfactory to our trade.' (X Q. 73) 'Here is a wringer (exhibit 12) that is satisfactory or rather we thought it would be satisfactory to our trade as a releasing means, referring particularly to the bars but not the catch arrangement. We were of the opinion then, and we still hold the same idea, that this catch arrangement is no good, and we realized that we must develop some other device as a means of keeping the top part on the frame. * * * In the evolution following Etten exhibit 12 we first perfected the latching arrangement on the end release wringer No. 940 and then later we found a way to discard the target which you see on Etten Exhibit 8 to make it possible to release the trigger on that wringer through the medium of a pair of bars. Etten exhibit 14 being one of the examples of this maneuver.'

"It is clear from these statements that exhibit 12, as a whole, was not satisfactory and accordingly it cannot be held a reduction to practice. * * *

"It follows that Etten was subsequent to Hoke in reducing to practice and it is clear that he was lacking in diligence during the fall of 1931 and the following winter. Such activity as there was during this period seems to have been directed to the exhibit 8 type of wringer, which does not satisfy the counts. In view of this lack

of diligence, Etten cannot prevail over Hoke regardless of his date of conception and such date, therefore, need not be fixed."

We are convinced, for the reasons stated, that the conclusions reached below were without error in both cases.

The decision of the Board of Appeals is accordingly affirmed.

Affirmed.